IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONALD GROCHOWSKI
as a representative administrator of the
estate of Kenneth Grochowski,
deceased, et al.,

   Plaintiffs,

     v.

CLAYTON COUNTY, GEORGIA
is sued through its Chair Jeffrey E.
Turner, and Commissioners in their
official capacity, and through the
Sheriff Kemuel Kimbrough, in his
official capacity, individually and
jointly, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:14-CV-2586-TWT

**OPINION AND ORDER**

This is a civil rights action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 47]. For the reasons stated below, the motion to dismiss is GRANTED in part and DENIED in part.

## I. Background

Twenty year old William Alexander Brooks was arrested on July 31, 2012, at around 10:30PM.[1] He was charged with theft by receiving stolen property, using a false name, driving on a suspended license, and safety belt violations.[2] He was transported to the Clayton County Jail.[3] Brooks' criminal history included at least two arrests for violent offenses within the previous six months, one of which resulted in a conviction.[4] Brooks was also held for violation of his probation on a Florida burglary charge.[5] At the jail, he was initially housed in segregation from August 1, 2012, to August 2, 2012.[6] On August 2, 2012, Officer Baker classified Brooks as a High Medium Risk Inmate.[7] Then, on August 3, 2012, Officer Brown moved Brooks out of segregation into the general population.[8]

---

[1] Compl. ¶ 17.

[2] Id. ¶ 18.

[3] Id. ¶ 17.

[4] Id. ¶ 25.

[5] Id. ¶ 24.

[6] Id. ¶ 21.

[7] Id. ¶ 22.

[8] Id. ¶ 26.

On August 8 or 9, the Clayton County Jail received notification that Brooks had an active warrant in Henry County, Georgia, for contempt of court relating to child support obligations.[9] After Brooks was notified of the warrant, he began to display erratic behavior.[10] The Plaintiffs allege that some of the Defendants, specifically Sheriff Kimbrough, Watkins, Major Sowell, Lieutenant Johnson, Sergeant Love, Officer Smith, Officer Woolf, Officer Brown, Officer Baker, and Officer McKibbons observed Brooks' erratic behavior.[11] Additionally, between August 11 and August 14, Brooks' family members notified personnel at the Clayton County Jail that he was a threat to himself and others and needed to be kept in segregation.[12]

Kenneth Grochowski, the Plaintiffs' decedent, was arrested on August 8, 2012, at Hartsfield-Jackson Atlanta International Airport.[13] He was held on a bench warrant for failure to appear related to a 2007 DUI charge in Illinois.[14] Initially, Grochowski's physical health assessment revealed hypertension, and he was referred to the chronic

---

[9] Id. ¶ 28.

[10] Id. ¶ 29.

[11] Id. ¶ 31.

[12] Id. ¶ 32.

[13] Id. ¶ 36.

[14] Id. ¶¶ 34-35, 37.

care clinic.[15] On August 10, Officer Baker reclassified Grochowski, and he was moved to Housing Unit Six Section 2 Cell 610.[16] On August 11, Officer McKibbons moved Brooks into Housing Unit Six.[17] By August 14, Brooks and Grochowski were housed in the same cell.[18]

On August 14, Lieutenant Johnson was the watch commander for the night team, Sergeant Love was the Housing Unit Sergeant for Unit Six, Officer Woolf was the Control Officer for Unit Six, and Officer Smith was the runner for Unit Six.[19] At around 9:05PM, Officer Smith was conducting the pill call inside Housing Unit Six.[20] Also around that time, Brooks repeatedly struck Grochowski until Grochowski was unconscious.[21] Brooks then dragged Grochowski to a metal toilet and submerged his

---

[15]  Id. ¶ 38.

[16]  Id. ¶ 39.

[17]  Id. ¶ 40.

[18]  Id. ¶ 41.

[19]  Id. ¶¶ 42-44.

[20]  Id. ¶ 46.

[21]  Id. ¶ 50.

face in the water, in an attempt to drown him.[22] While Grochowski was face down in the toilet, Brooks began waving and yelling at the cell door.[23] No one responded.[24]

Eventually, Brooks told another inmate, Aaron Ford Lewis, "I think I just killed this dude, man."[25] Lewis notified Officer Smith of the emergency and Brooks' comment.[26] Officer Smith exited Housing Unit Six without responding.[27] Lewis went to the second level, looked into the cell, and saw Grochowski on the floor with his head hanging over the toilet.[28] Lewis then again attempted to inform Officer Smith about the situation.[29] After several attempts by Lewis to explain the seriousness of the emergency, Officer Smith finally went to Brooks and Grochowski's cell.[30] Once at the cell, it took Officer Smith several attempts to get Sergeant Love's attention in the

---

[22] Id. ¶ 52.

[23] Id. ¶ 59.

[24] Id. ¶ 60.

[25] Id. ¶ 62.

[26] Id. ¶ 63.

[27] Id.

[28] Id. ¶ 65.

[29] Id. ¶ 66.

[30] Id.

control tower.[31] Eventually, Sergeant Love remotely opened the cell door.[32] Once inside the cell, at approximately 9:30PM, Officer Smith radioed for paramedics.[33] Grochowski was transported to Southern Regional Medical Center where he was pronounced dead at 4:20AM on August 15, 2012.[34]

The Plaintiffs make various claims against Clayton County, numerous Clayton County Jail officials, both in their official and individual capacities, and medical providers who had contracts with the jail. Clayton County and the jail officials now move to dismiss the claims against them.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[35] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is

---

[31] Id. ¶ 67.

[32] Id.

[33] Id. ¶ 68.

[34] Id. ¶¶ 68-69.

[35] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

extremely "remote and unlikely."[36] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[37] Generally, notice pleading is all that is required for a valid complaint.[38] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[39]

### III. Discussion

Sheriff Kimbrough, Chief Deputy Watkins, Major Sowell, Captain Samuel Smith, and Sergeant Love move to dismiss the claims against them in their official capacities. They argue that they are entitled to Eleventh Amendment immunity because they were acting as arms of the state. The Eleventh Circuit has held that sheriffs are entitled to Eleventh Amendment immunity in the context of jail administration, stating that "a sheriff's authority and duty to administer the jail in his

---

[36] Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[37] See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[38] See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).

[39] See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

jurisdiction flows from the State, not the County."[40] When the sheriff is entitled to Eleventh Amendment immunity, his employees are also entitled to Eleventh Amendment immunity for suits against them in their official capacities.[41] The Defendants concede, however, that the Sheriff and his deputies are not entitled to sovereign immunity for claims based on an alleged failure to provide medical care.[42] Here, the Plaintiffs make claims against the Sheriff and his deputies both related to jail administration and to medical care. Pursuant to the Eleventh Circuit's holdings in Manders and Purcell, Sheriff Kimbrough is entitled to Eleventh Amendment immunity on the claims against him in his official capacity related to jail administration, including those related to classification of inmates. Additionally, under Scruggs, the Sheriff's deputies are entitled to Eleventh Amendment immunity on the claims against them in their official capacities related to jail administration. Those claims should be dismissed. The claims related to medical care, however, should not be dismissed. The Defendants' motion should therefore be granted in part and denied in part.

---

[40] Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1325 (11th Cir. 2005) (quoting Manders v. Lee, 338 F.3d 1304, 1315 (11th Cir. 2003) (en banc)).

[41] Scruggs v. Lee, 256 F. App'x 229, 232 (11th Cir. 2007).

[42] Reply Br. in Support of Defs.' Mot. to Dismiss, at 7.

Clayton County also moves to dismiss the Plaintiffs' claims against it. Clayton County argues that the only claims the Plaintiffs make against it rely on liability of the Sheriff and his deputies. In fact, the Plaintiffs allege that the county jail design is defective, stopping the deputies from seeing any assaults.[43] Additionally, the Plaintiffs allege that Clayton County failed to provide adequate funding to staff the jail, leading to the harm here.[44] The Eleventh Circuit has noted that "Georgia counties have obligations involving the jail structure and inmates' food, clothing, and medical necessities."[45] Georgia counties also must provide their sheriffs reasonable funds to discharge their duties.[46] To the extent that the Plaintiffs' claims rely on the liability of the Sheriff, they should be dismissed for the reasons discussed above. This Court finds, however, that the Plaintiffs also make claims against Clayton County related to the jail structure and failure to provide medical care. The Plaintiffs plead facts that, if true, support a plausible claim against Clayton County here. Those claims should not be dismissed.

---

[43]   Compl. ¶¶ 57, 99(d).

[44]   Compl. ¶ 106(g).

[45]   Manders v. Lee, 338 F.3d 1304, 1322 (11th Cir. 2003) (en banc).

[46]   Id. at 1323.

Sheriff Kimbrough, Chief Deputy Watkins, Major Sowell, Captain Smith, and Lieutenant Johnson also move to dismiss the claims against them in their supervisory capacities. In the Eleventh Circuit, "to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."[47] When considering claims regarding the supervision of pretrial detainees, like the Plaintiffs' decedent here, "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the [Fourteenth] Amendment."[48] A showing of deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."[49] The official must not only be aware of the substantial risk, he must react to it in an objectively unreasonable manner.[50] In order to alert a supervisor to a substantial risk of serious harm, there must be "evidence of widespread and flagrant abuse."[51] A single, isolated, past incident does

---

[47] Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1047-48 (11th Cir. 2014).

[48] Id. at 1047.

[49] Id.

[50] Id.

[51] Id. at 1052.

not meet that standard.[52] Here, the Plaintiffs allege only one prior incident where an emergency call button was deactivated.[53] Because one incident is not enough to show knowledge of a substantial risk of harm, the supervisors here cannot be said to have knowledge of that risk. Such lack of knowledge precludes a showing of a causal connection between the supervisors' actions and those of their subordinates. If, however, the Plaintiffs show that a supervisor was involved in the constitutional violation on his own, a claim may also stand. Here, the Plaintiffs plead facts leading to a plausible claim for relief against the supervisors. Specifically, the Plaintiffs plead that the supervisory defendants, with the exception of Captain Smith, observed Brooks acting erratically, but left him in general population anyway.[54] If true, observation of erratic behavior could indicate a substantial risk of serious harm to the supervisors. It is also plausible that given the nature of the erratic behavior, failing to put Brooks in a cell by himself could be objectively unreasonable. The motion to dismiss the claims against the supervisory defendants, except for those against Captain Smith, should be denied. Because the Plaintiffs make no allegation that Captain Smith observed Brooks' erratic behavior or in any other way participated in any

---

[52] Id. at 1051-52.

[53] Compl. ¶ 106(b).

[54] Id. ¶ 31.

constitutional violations, the claims against Captain Smith in his supervisory capacity should be dismissed.

The Defendants also move to dismiss the Plaintiffs' failure to train claim against the supervisory defendants. A supervisor may be held liable for failing to train his subordinates "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact."[55] The Plaintiffs plead no facts supporting a failure to train claim. Additionally, there is no indication from the complaint of any failure to train amounting to deliberate indifference. The failure to train claim against Sheriff Kimbrough, Chief Deputy Watkins, Major Sowell, Captain Smith, and Lieutenant Johnson should be dismissed.

Tameika Smith, P.E. McKibbons, L.G. Baker, A. Love, the estate of Lawrence Woolf, and K.H. Brown also move to dismiss the claims against them in their individual capacities. Again here, "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the [Fourteenth] Amendment."[56] The Plaintiffs' complaint alleges that Tameika Smith was notified that Mr. Grochowski was in danger several times before responding to provide help.[57]

---

[55] Keith, 749 F.3d at 1052.

[56] Id. at 1047.

[57] Compl. ¶¶ 63, 66.

Taking the facts as true and in the light most favorable to the Plaintiffs, this Court finds that the complaint plausibly alleges a claim for a constitutional violation against Tameika Smith for having knowledge that an inmate was in danger and not responding. The claims against Tameika Smith should not be dismissed. The complaint also alleges that all of the non-supervisory defendants observed Brooks acting erratically.[58] As with the supervisory defendants, this fact shows that the Plaintiffs have stated a plausible claim for relief. The motion to dismiss the individual defendants should be denied.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 47] is GRANTED in part and DENIED in part.

SO ORDERED, this 11 day of February, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[58] Id. ¶ 32.